# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND
*Southern Division*

|  |  |
|---|---|
| PAUL A. KABBA, | * |
| Plaintiff, | * |
| v. | * Case No.: PWG-17-211 |
| RENT-A-CENTER, | * |
| Defendant. | * |

## MEMORANDUM OPINION AND ORDER

Defendant Rent-A-Center hired Plaintiff Paul A. Kabba on March 26, 1996. He worked for Defendant as a store manager until June 2, 2008, when he was violently assaulted and robbed at gunpoint. After the assault, he no longer could work, due to his injuries, and he took medical leave, following which Rent-A-Center "administratively terminated" his employment. Compl. ¶¶ 7, 12–17, ECF No. 1. Kabba sought re-employment with Rent-A-Center in 2012, but was not hired. In February 2013 he again applied and Rent-A-Center hired him as a lead assistant manager and directed him to report to work on March 1, 2013. *Id.* ¶ 17. But, when Kabba informed the store manager toward the end of his first day that "he had medical restrictions and limitations on heavy lifting" and provided the manager with his medical records, Rent-A-Center terminated his employment. *Id.* ¶¶ 18–20. Kabba filed this lawsuit against Rent-A-Center, alleging that "because of his disability due to serious injuries from armed robbers, race (African), color (black), national origin (Sierra Leone) he was discharged from his position as manager, rehired as a manager and then fired the same day," in violation of the Americans with

Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101 – 12213; Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*; and state and local law. Compl. ¶ 1.

Pending is Rent-A-Center's Motion to Dismiss or in the Alternative, to Stay Proceedings and Compel Arbitration, based on the arbitration agreements that the parties both signed in 2002, during Kabba's first period of employment, and in 2012, when he applied for another position but was not hired ("2002 Arbitration Agreement" and "2012 Arbitration Agreement"). ECF No. 9.[1] Kabba contends that the 2002 and 2012 Arbitration Agreements do not apply to his claims because Rent-A-Center presented him with, and he declined to sign, an arbitration agreement when he became a new hire in 2013. Kabba has clarified that his claims pertain only to his brief period of employment in 2013, Pl.'s Opp'n 1–2, despite the reference to his 2008 discharge in his Complaint, *see* Compl. ¶ 1. Because I find that, on the record before me and drawing all reasonable inferences in favor of Kabba, the earlier arbitration agreements do not establish that Kabba and Rent-A-Center intended to arbitrate the issue of whether Kabba's claims relating to his 2013 re-employment (without an arbitration agreement) are in fact arbitrable, I will deny Rent-A-Center's motion, treated as one for summary judgment, and order Rent-A-Center to respond to Kabba's Complaint.

---

[1] The parties fully briefed this Motion. *See* ECF Nos. 9-1, 12, 13, 14. A hearing is not necessary. *See* Loc. R. 105.6. Rent-A-Center attaches both agreements to its Motion, along with a Declaration from its Human Resources Director, Marc Tuckey. ECF No. 9-2. Rent-A-Center's request to strike Kabba's response as untimely, Def.'s Reply 2, is denied. Kabba explained that he filed his Opposition within fourteen days of serving Rent-A-Center, rather than within fourteen days of receiving the Motion, because I ordered Defendant to file its Motion after being served, *see* ECF No. 7. Pl.'s Surreply 1. Insofar as Plaintiff filed his Opposition more than fourteen days after Defendant's motion and then "pray[ed] for the Court's forgiveness," which I construe as a motion to extend time, I find excusable neglect. *See* Fed. R. Civ. P. 1, 6(b)(1).

## Standard of Review

Rent-A-Center moves to dismiss or to stay and compel arbitration under the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1–15. Congress enacted the FAA "to promote the enforceability of arbitration agreements and to make arbitration a more viable option to parties weary of the ever-increasing 'costliness and delays of litigation.'" *Saturn Distrib. Corp. v. Williams*, 905 F.2d 719, 722 (4th Cir. 1990) (quoting *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 220 (1985) (quoting H.R. Rep. No. 96, 68th Cong., 1st Sess. 2 (1924) (quotation marks omitted))). It "reflects 'a liberal federal policy favoring arbitration agreements.'" *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500 (4th Cir. 2002) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24 (1983)). If an issue is "'referable to arbitration under an agreement in writing for such arbitration,'" then a stay is mandatory and a motion to compel must be granted. *Id.* (quoting 9 U.S.C. § 3). "Notwithstanding the terms of § 3, however, dismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable." *Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709–10 (4th Cir. 2001).[2]

---

[2] The Fourth Circuit has observed that "[t]here may be some tension between [its earlier] decision in *Hooters* [*of America v. Phillips*, 173 F.3d 933 (4th Cir. 1999)]—indicating that a stay is required when the arbitration agreement 'covers the matter in dispute'—and *Choice Hotels*— approving dismissal 'when all of the issues presented . . . are arbitrable.'" *Aggarao v. MOL Ship Mgmt. Co.*, 675 F.3d 355, 376 (4th Cir. 2012) (declining to resolve dispute). Yet, this Court has noted that, despite the "disagreement within the Fourth Circuit as to if dismissal is appropriate, . . . district courts within the Fourth Circuit have continued to find dismissal appropriate." *Taylor v. Santander Consumer USA, Inc.*, No. DKC 15-0442, 2015 WL 5178018, at *7 (D. Md. Sept. 3, 2015) (dismissing case where all issues were arbitrable), *appeal dismissed* (Apr. 22, 2016); *see, e.g.*, *SC&H Grp., Inc. v. Altus Grp. U.S., Inc.*, No. WMN-16-1037, 2016 WL 3743055, at *4 (D. Md. July 13, 2016) (dismissing case where all issues were arbitrable); *Doe v. New Ritz, Inc.*, No. RDB-14-2367, 2016 WL 1642933, at *5 (D. Md. Apr. 26, 2016) (same); *Bey v. Midland Credit Mgmt., Inc.*, No. GJH-15-1329, 2016 WL 1226648, at *5 (D. Md. Mar. 23, 2016) (same).

When a party moves to compel arbitration, or to dismiss on the basis of a governing arbitration agreement, the Court first must "determine whether the parties agreed to arbitrate that dispute." *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 626 (1985). The moving party must show

> (1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the [plaintiff] to arbitrate the dispute.

*Adkins v. Labor Ready, Inc.,* 303 F.3d 496, 500–01 (4th Cir. 2002) (quoting *Whiteside v. Teltech Corp.,* 940 F.2d 99, 102 (4th Cir. 1991)). While the Court applies the "federal substantive law of arbitrability," *id.* (quoting *Moses H. Cone Mem'l Hosp.,* 460 U.S. 1, 24 (1983)), it applies "state law governing contract formation" to determine "[w]hether a party agreed to arbitrate a particular dispute," *Adkins,* 303 F.3d at 501.

Rent-A-Center styles its motion as one to dismiss Kabba's Complaint but attaches to it the 2002 and 2012 Arbitration Agreements, as well as the Declaration of its Human Resources Director, Marc Tuckey, who provides additional information about Kabba's 2012 employment application. ECF No. 9-2, at 1–3. And, in response, Kabba attaches employment documents and his own Affidavit. On a motion to dismiss, the Court only may consider attached documents that are "integral to and explicitly relied on in the complaint," and only when "the plaintiffs do not challenge [their] authenticity. *Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 618 (4th Cir. 1999). While Kabba does not dispute the authenticity of the documents that Rent-A-Center filed (and clearly also does not dispute the authenticity of the documents he himself attaches), he does not rely on any of them in his Complaint and none is integral to it.

Nonetheless, the Court may consider this broader array of documents by treating Rent-A-Center's motion to dismiss as a motion for summary judgment, which it may do pursuant to Fed. R. Civ. P. 12(d). *See Syncrude Canada Ltd. v. Highland Consulting Grp., Inc.*, No. RDB-12-318, 2013 WL 139194, at *2 (D. Md. Jan. 10, 2013). For the Court to convert the motion to dismiss to one for summary judgment, both parties must have had "a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). Notably, "the Federal Rules do not prescribe that any particular notice be given before a Rule 12 motion is converted to a Rule 56 motion." *Ridgell v. Astrue*, DKC-10-3280, 2012 WL 707008, at *7 (D. Md. Mar. 2, 2012). Thus, this requirement "can be satisfied when a party is 'aware that material outside the pleadings is before the court.'" *Walker v. Univ. of Md. Med. Sys. Corp.*, No. CCB-12-3151, 2013 WL 2370442, at *3 (D. Md. May 30, 2013) (quoting *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985)). Indeed, while the Court "clearly has an obligation to notify parties regarding any court-instituted changes in the pending proceedings, [it] does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998).

When a defendant attaches to its motion to dismiss materials that are not integral to the Complaint, as Rent-A-Center did here, the plaintiff should be "alert[] . . . to the possibility" that the Court may treat the motion as a motion for summary judgment. *Ridgell*, 2012 WL 707008, at *7; *see Laughlin*, 149 F.2d at 260–61. Likewise, when a plaintiff attaches non-integral materials to its opposition, as Kabba did here, this should alert the defendant that the Court may treat the motion as a motion for summary judgment. *See Ridgell*, 2012 WL 707008, at *7. Thus, the parties' attachments and the Federal Rules of Civil Procedure provided adequate notice that the Court could construe Rent-A-Center's motion as one for summary judgment. *See Laughlin*, 149

5

F.2d at 260–61; *Ridgell*, 2012 WL 707008, at *7. And, each party had "a reasonable opportunity to present all the material that is pertinent to the motion," Kabba with his Opposition and Rent-A-Center with its Reply. *See* Fed. R. Civ. P. 12(d). I will treat Defendant's motion as a motion for summary judgment. *See id.*

Summary judgment is proper when the moving party demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c)(1)(A); *see Baldwin v. City of Greensboro*, 714 F.3d 828, 833 (4th Cir. 2013). If the party seeking summary judgment demonstrates that there is no evidence to support the nonmoving party's case, the burden shifts to the nonmoving party to identify evidence that shows that a genuine dispute exists as to material facts. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 & n.10 (1986). The existence of only a "scintilla of evidence" is not enough to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986). Instead, the evidentiary materials submitted must show facts from which the finder of fact reasonably could find for the party opposing summary judgment. *Id.* The Court considers the undisputed facts, and to the extent there is a genuine dispute of material fact, "this Court reviews the facts and all reasonable inferences in the light most favorable to the nonmoving party." *Downing v. Balt. City Bd. of Sch. Comm'rs*, No. RDB-12-1047, 2015 WL 1186430, at *1 (D. Md. Mar. 13, 2015) (citing *Scott v. Harris*, 550 U.S. 372, 378 (2007)).

## Background

During Kabba's initial period of employment, the parties entered into the 2002 Arbitration Agreement. 2002 Arb. Agr. 4 (signed Jan. 10, 2002), ECF No. 9-2, at 5–8; *see* Pl.'s Opp'n 1. Relevantly, it defined covered claims as follows:

CLAIMS COVERED BY THE AGREEMENT

The Company and I mutually consent to the resolution by arbitration of all claims or controversies ("claims"), past, present or future, whether or not arising out of my application for employment, assignment/employment, or the termination of my assignment/employment that the Company may have against me or that I may have against any of the following: (1) the Company, (2) its officers, directors, employees, or agents in their capacity as such or otherwise, (3) the Company's parent, subsidiary, and affiliated entities, (4) the benefit plans or the plans' sponsors, fiduciaries, administrators, affiliates, and agents, and/or (5) all successors and assigns of any of them.

The only claims that are arbitrable are those that, in the absence of this Agreement, would have been justiciable under applicable state or federal law. The claims covered by this Agreement include, but are not limited to: claims for wages or other compensation due; claims for breach of any contract or covenant (express or implied); tort claims; claims for discrimination (including, but not limited to race, sex, sexual harassment, sexual orientation, religion, national origin, age, workers' compensation, marital status, medical condition, handicap or disability); claims for benefits (except claims under an employee benefit or pension plan that either (1) specifies that its claims procedure shall culminate in an arbitration procedure different from this one, or (2) is underwritten by a commercial insurer which decides claims); and claims tor violation of any federal, state or other governmental law, statute, regulation, or ordinance, except claims excluded in the section of this Agreement entitled "Claims Not Covered by the Agreement."

. . .

CLAIMS NOT COVERED BY THE AGREEMENT

Claims I may have for workers' compensation benefits and unemployment compensation benefits are not covered by this Agreement. Also not covered are claims by the Company for injunctive and/or other equitable relief for unfair competition and/or the use and/or unauthorized disclosure of trade secrets or confidential information, as to which either party may seek and obtain relief from a court of competent jurisdiction.

*Id.* at 1. Additionally, it provides that "[t]he Arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute relating to the interpretation,

7

applicability, enforceability, or formation of this Agreement, including, but not limited to any claim that all or part of this Agreement is void or voidable." *Id.* at 2–3. The 2002 Arbitration Agreement also provided that it would "survive the termination of [Kabba's] assignment/employment and the expiration of any benefit," and significantly that it could "only be revoked or modified by a writing signed by the parties which specifically states an intent to revoke or modify th[e] Agreement." *Id.* at 3. By signing, Kabba "acknowledge[d] that [he] carefully read this Agreement; that [he] underst[oo]d its terms" and that he was "giving up [his] right to a jury trial"; this language appeared in all capital letters. *Id.* at 4.

Kabba took a medical leave of absence in 2008, following his injury. Ltr. to Kabba, Pl.'s Opp'n Ex. 1, ECF No. 12-1, at 2. Because his absence "extend[ed] beyond six months[,] the company perform[ed] an Administrative Termination of Employment," effective December 19, 2008, informing him that when he was "released by [his] medical care provider to perform the essential functions of [his] job, [he would] be considered for re-employment with the company," and Rent-A-Center would "attempt to find [him] an available, comparable position consistent with [his] qualifications and experience." *Id.*

Kabba sought re-employment with Rent-A-Center on December 4, 2012, filling out an on-line application for a sales manager position; the application required his assent via e-signature to another arbitration agreement ("2012 Arbitration Agreement"). Application & 2012 Arb. Agr., ECF No. 9-2, at 10–13; Def.'s Mem. 1 n.2; Pl.'s Opp'n 1; Tuckey Decl. ¶¶ 5–6. The 2012 Arbitration Agreement provided "any and all claims and/or disputes, past, present or future, between [Kabba] and the Company, arising out of or related to [his] application for employment, employment and/or the termination of [his] employment, shall be decided by an arbitrator

through arbitration and not by way of court or jury trial." 2012 Arb. Agr. Similar to the 2002 Arbitration Agreement, it provided:

> [T]his Arbitration Agreement applies to any and all claims and/or disputes that the Company may have against me or that I may have against: (1) the Company,(2) its officers, directors, employees, or agents in their capacity as such or otherwise, and (3) all successors and assigns of any of them. Disputes subject to this Arbitration Agreement include without limitation, claims for unfair competition: claims for wages or other compensation due, overtime, breaks and rest periods; claims for breach of any contract or covenant (express or implied);tort or statutory claims for harassment, retaliation and discrimination (including, but not limited to race, sex, sexual orientation, religion, national origin, age, genetic trait, workers' compensation, marital status, military service, leave status, medical condition, handicap or disability); and claims for violation of any federal, state or other governmental law, statute, regulation, or ordinance. Further, covered claims and/or disputes include any claim or controversy regarding this Arbitration Agreement or any portion of the Arbitration Agreement or its interpretation, enforceability, applicability, unconscionability, arbitrability or formation, or whether the Arbitration Agreement or any portion of it is void or voidable, with the exception noted in the Class Action Waiver below. The following claims and/or disputes are not covered under this Arbitration Agreement: (i) Workers' Compensation benefit claims:(ii) state unemployment or disability insurance compensation claims:(iii) claims for benefits under employee benefit plans covered by ERISA that contain an appeal procedure or other exclusive and/or binding dispute resolution procedure in the respective plan;(iv) claims under the National Labor Relations Act within the jurisdiction of the National Labor Relations Board; (v) claims that the Dodd-Frank Wall Street Reform and Consumer Protection Act or other controlling federal statutes bar from the coverage of mandatory pre-dispute arbitration agreements.

*Id.* And, like the earlier agreement, it limited the parties' ability to modify or terminate the agreement, stating: "Notwithstanding any contrary language, if any, in this application and/or in any Company policy or handbook, this Arbitration Agreement may not be modified, revised or terminated absent a writing signed by both parties." *Id.* The 2012 Arbitration Agreement concluded with the following language, in all capital letters:

> DO NOT SIGN UNTIL YOU HAVE CAREFULLY READ THE ABOVE ARBITRATION AGREEMENT. BY ELECTRONICALLY SIGNING BELOW, YOU ARE AGREEING THAT YOU HAVE CAREFULLY READ THIS ARBITRATION AGREEMENT AND ARE YOU ARE GIVING UP YOUR RIGHT TO A COURT OR JURY TRIAL, AND THAT PURSUANT TO THE

TERMS OF THIS ARBITRATION AGREEMENT, YOU AND THE COMPANY ARE AGREEING TO ARBITRATE DISPUTES COVERED BY THIS ARBITRATION AGREEMENT.

*Id.* Rent-A-Center did not hire, interview, or contact Kabba in response to his application. Kabba Aff. ¶ 2, Pl.'s Opp'n Ex. 4, ECF No. 12-1, at 18–20.

Just over two months later, on February 15, 2013, Kabba walked into a Rent-A-Center location and applied for lead assistant manager position. *Id.* ¶ 3. Rent-A-Center hired him, had him complete an electronic application that "did not include an arbitration form," *Id.* ¶¶ 3–4, and provided him with documents to sign, including an arbitration agreement ("2013 Arbitration Agreement"). Pl.'s Opp'n Ex. 2–3, ECF No. 12-1, at 4–16. Kabba signed the Employment Eligibility Verification but elected not to sign the 2013 Arbitration Agreement. *See id.*; *see also* Kabba Aff. ¶ 5.

## Discussion

The parties agree that they entered into valid agreements to arbitrate in 2002 and 2012, and it is undisputed that Kabba did not sign the 2013 Arbitration Agreement. It also is undisputed that the 2002 Arbitration Agreement provided that it covered "all claims or controversies" that the parties may have against each other, including discrimination claims, "past, present or future, whether or not arising out of [Kabba's] application for employment, assignment/employment, or the termination of [his] assignment/employment," 2002 Arb. Agr. 1, and the 2012 Arbitration Agreement included similar language, 2012 Arb. Agr. Additionally, the 2002 Arbitration Agreement explicitly stated that it would "survive the termination of [Kabba's] assignment/employment and the expiration of any benefit." 2002 Arb. Agr. 3. Kabba asserts that he does not bring any claims related to his first period of employment or his unsuccessful application for re-employment in 2012, which he concedes he would be required to

arbitrate. Pl.'s Opp'n 1–2. Rather, the issue is whether Kabba's rejection of the 2013 Arbitration Agreement, and Rent-A-Center's hiring him without a signed arbitration agreement, modified or revoked the 2002 and 2012 Arbitration Agreements such that they do not require arbitration of Kabba's pending claims against Rent-A-Center. In other words, are the claims brought in this litigation within the scope of the only arbitration agreements between the parties? This is a matter of contract interpretation, and Maryland law applies because the parties entered into the 2002 and 2012 Arbitration Agreements in Maryland. *See* Def.'s Mem. 5; *Adkins,* 303 F.3d at 501.

Relying on *Rent-A-Center West, Inc. v. Jackson*, 561 U.S. 63 (2010), in which "[t]he United States Supreme Court upheld the same Arbitration Agreement that Plaintiff signed," Rent-A-Center insists that, regardless whether Kabba's claims are subject to arbitration, the dispute regarding arbitrability was "clearly and unmistakable delegated . . . to the arbitrator." Def.'s Mem. 1. In *Rent-A-Center West*, a former employee of Rent-A-Center West sued the company for employment discrimination and the company moved to dismiss based on an arbitration agreement that included a clause identical to a clause in the 2002 Arbitration Agreement at issue in this case, providing that "[t]he Arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Agreement including, but not limited to any claim that all or any part of this Agreement is void or voidable." 561 U.S. at 65–66. The district court granted the motion, over the plaintiff's objection that the agreement was unconscionable, and, once the case reached it, the Supreme Court "consider[ed] whether, under the [FAA], a district court may decide a claim that an arbitration agreement is unconscionable, where the agreement explicitly assigns that decision to the arbitrator." *Id.* at 65–67.

Referring to the clause at issue as "the delegation provision," the Supreme Court observed:

> The delegation provision is an agreement to arbitrate threshold issues concerning the arbitration agreement. We have recognized that parties can agree to arbitrate "gateway" questions of "arbitrability," such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy. *See*, *e.g.*, *Howsam,* 537 U.S., at 83–85 [ ]; *Green Tree Financial Corp. v. Bazzle,* 539 U.S. 444, 452 [ ] (2003) (plurality opinion). This line of cases merely reflects the principle that arbitration is a matter of contract. *See First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 943 [ ] (1995). An agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other. The additional agreement is valid under § 2 "save upon such grounds as exist at law or in equity for the revocation of any contract," and federal courts can enforce the agreement by staying federal litigation under § 3 and compelling arbitration under § 4. The question before us, then, is whether the delegation provision is valid under § 2.

*Id.* at 68–70 (footnote omitted). But, in a footnote, the Supreme Court noted that "[t]here is one caveat." *Id.* at 69 n.1. It explained:

> *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 944 [ ] (1995), held that "[c]ourts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clea[r] and unmistakabl[e]' evidence that they did so."
>
> [T]he *First Options* "clear and unmistakable" requirement . . . pertains to the parties' *manifestation of intent,* not the agreement's *validity*. As explained in *Howsam v. Dean Witter Reynolds, Inc.,* 537 U.S. 79, 83 [ ] (2002), it is an "interpretive rule," based on an assumption about the parties' expectations. In "circumstance[s] where contracting parties would likely have expected a court to have decided the gateway matter," *ibid.,* we assume that is what they agreed to. Thus, "[u]nless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." *AT & T Technologies, Inc. v. Communications Workers,* 475 U.S. 643, 649 [ ] (1986).

*Rent-A-Ctr., W.*, 561 U.S. at 69 n.1.

The threshold issue, therefore, is whether the parties intended to arbitrate the arbitrability of the claims Kabba brings in this lawsuit that relate to his brief re-employment in 2013, following a more than four-year break in his initial employment with Rent-A-Center. *See id.*

Clearly, when they signed the 2002 Arbitration Agreement, they intended to arbitrate "any dispute relating to the interpretation, applicability, enforceability, or formation of th[at] Agreement." 2002 Arb. Agr. 2–3. And, when they signed the 2012 Arbitration Agreement, they similarly intended to arbitrate "any claim or controversy regarding [the 2012] Arbitration Agreement or any portion of the Arbitration Agreement or its interpretation, enforceability, applicability, unconscionability, arbitrability or formation." 2012 Arb. Agr. But, "arbitration is a matter of contract," *Rent-A-Ctr., W.*, 561 U.S. at 69, and parties can modify a contract, *Galloway v. Santander Consumer USA, Inc.*, 819 F.3d 79, 88 (4th Cir. 2016).

Certainly, the 2002 Arbitration Agreement explicitly stated that it could "only be revoked or modified by a writing signed by the parties which specifically states an intent to revoke or modify th[e] Agreement." 2002 Arb. Agr 3. The 2012 Arbitration Agreement also required "a writing signed by both parties" to modify, revise, or terminate it. 2012 Arb. Agr. Yet, such language is disfavored and not enforced under Maryland law. *See Galloway*, 819 F.3d at 88. Indeed, "under Maryland law, contractual limitations on future modifications are not effective to prevent parties from entering into new agreements orally or by performance; rather, they only provide context for interpreting subsequent conduct." *Id.* (citing *Hovnanian Land Inv. Grp., LLC v. Annapolis Towne Ctr. at Parole, LLC*, 25 A.3d 967, 978–83 (Md. 2011)). The Maryland courts have "show[n] a persistent unwillingness to give dispositive and preclusive effect to contractual limitations on future changes to that contract . . . whether it is mutual modification, novation, waiver of remedies, or . . . a waiver of condition precedent." *Id.* (quoting *Hovnanian*, 25 A.3d at 978–83). Thus, "parties may modify their original agreement by their conduct 'notwithstanding a written agreement that any change to a contract must be in writing.'" *Id.* (quoting *University Nat'l Bank v. Wolfe*, 369 A.2d 570, 576 (Md. 1977)).

Moreover, it is clear that Kabba, having signed the 2002 and 2012 Arbitration Agreements, for which his signature acknowledged that he "carefully read" the agreements, 2002 Arb. Agr. 4; 2012 Arb. Agr., was aware of their contents and aware that Rent-A-Center's employment documents included arbitration agreements. *See Walther v. Sovereign Bank*, 872 A.2d 735, 745 (Md. 2005) ("[T]he law presumes that a person knows the contents of a document that he executes and understands at least the literal meaning of its terms." (quoting *Merit Music Serv., Inc. v. Sonneborn*, 225 A.2d 470, 474 (Md. 1967))). Consequently, his refusal to sign the 2013 Arbitration Agreement is clearly a manifestation of his rejection of its terms, which are substantially the same as, if not identical to, the terms of the 2002 Arbitration Agreement with regard to the provisions at issue here.

When Rent-A-Center was presented with Kabba's application for re-employment in 2013, but no signed arbitration agreement, it had a choice. It could have refused to hire him, or it could have hired him without the signed arbitration agreement. Its choice has consequences. Clearly, a reasonable inference could be drawn that Rent-A-Center believed that, in order to compel arbitration of any employment disputes relating to Kabba's 2013 hiring or subsequent employment and termination, a newly executed arbitration agreement was required. If not, it had no reason to include one in the employment application.[3] The fact that Rent-A-Center elected to hire Kabba in 2013 without a new arbitration agreement could result in a reasonable inference that it, too, was willing to forego this requirement.

---

[3] Unlike Kabba's 2012 online application, to which Rent-A-Center appended an arbitration agreement as a matter of course without knowing the identity of the applicant, the 2013 employment application was presented to Kabba in person for him to complete, after Rent-A-Center agreed to hire him. Kabba Aff. ¶¶ 2–5.

Thus, to the extent that the 2002 and 2012 Arbitration Agreements, including the delegation provision, otherwise would apply to claims arising from Kabba's 2013 employment,[4] the parties' conduct could evince a mutual intent to modify the agreements such that they do not apply to Kabba's 2013 employment. *See Galloway*, 819 F.3d at 88; *University Nat'l Bank*, 369 A.2d at 576. As a result, it is neither clear nor unmistakable that the parties agreed to arbitrate the arbitrability of Kabba's claims before this Court pertaining to his 2013 employment. Thus, the gateway issue of arbitrability is not subject to arbitration, and this Court, not an arbitrator, must determine whether the parties agreed to arbitrate the claims. *See Rent-A-Ctr., W.*, 561 U.S. at 69 n.1; *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 944 (1995); *AT & T Techs., Inc. v. Comm'cns Workers,* 475 U.S. 643, 649 (1986).

As for whether Kabba's pending claims (which arise only out of Kabba's 2013 employment with Rent-A-Center, *see* Pl.'s Opp'n 1–2) are subject to arbitration, it is undisputed that the parties chose to proceed with Kabba's employment after he did not sign the 2013 Arbitration Agreement. But, a genuine dispute exists on the record before me regarding whether that conduct modified the 2002 and 2012 Arbitration Agreements such that neither would apply to his later, brief period of employment in 2013. Therefore, I cannot determine this issue as a matter of law. *See* Fed. R. Civ. P. 56(a). Accordingly, I will deny Defendant's motion to dismiss or stay proceedings and compel arbitration, treated as a motion for summary judgment.

This case will proceed to determine the gateway issue of arbitrability. After Defendant has filed an answer, I will issue a scheduling order and set in a telephone conference call, in

---

[4] On the record before me, the application of the earlier agreements to Kabba's 2013 employment is attenuated at best, given that he began employment in 2013 as a "new hire," after his employment had been terminated for more than four years, and he was hired in 2013 as a lead assistant manager, not for the store manager position that he held in 2008 or for the sales manager position for which he applied in 2012.

which I will address the scope of discovery, which will focus on arbitrability and not the broader issues of liability and damages.

## **ORDER**

Accordingly, it is, this 27th day of April, 2017, hereby ORDERED that

1. Defendant's Motion to Dismiss or in the Alternative, to Stay Proceedings and Compel Arbitration, ECF No. 9, treated as a motion for summary judgment, IS DENIED; and

2. By May 12, 2017, Defendant SHALL FILE an Answer to Plaintiff's Complaint, which alleges federal, state and local statutory violations based solely on Kabba's 2013 employment with Rent-A-Center.

/S/
Paul W. Grimm
United States District Judge

lyb