IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

PAUL A. KABBA,

    Plaintiff,

v.                                  Case No.: PWG-17-211

RENT-A-CENTER,

    Defendant.

## MEMORANDUM OPINION AND ORDER

Defendant Rent-A-Center hired Plaintiff Paul A. Kabba (who previously had worked for Rent-A-Center and been injured on the job), in February 2013 but terminated his employment on March 1, 2013, his first day of work, when he informed the store manager of his "medical restrictions and limitations." Compl. ¶¶ 17–20, ECF No. 1; *see* Kabba Dep. 69: 1–5, ECF No. 37-3. In response, Kabba sued Rent-A-Center, alleging that the termination was in violation of federal, state, and local law. *Id.* ¶ 1. Rent-A-Center filed a Motion to Dismiss or in the Alternative, to Stay Proceedings and Compel Arbitration ("First Motion"), based on the arbitration agreements that the parties both signed in 2002, during Kabba's first period of employment, and in 2012, when he applied for another position but was not hired ("2002 Arbitration Agreement" and "2012 Arbitration Agreement"). ECF No. 9.[1]  I treated the motion as one for summary judgment and denied it because, on the record before me at that time, which included the earlier arbitration agreements and also the undisputed fact that Rent-A-Center presented Kabba with an arbitration

---

[1] Rent-A-Center attached both agreements to its First Motion, along with a February 28, 2017 Declaration from its Human Resources Director, Marc Tuckey. ECF No. 9-2.

agreement when he became a new hire in 2013 ("2013 Arbitration Agreement")[2] and he declined to sign it, I could not determine as a matter of law that the parties intended to arbitrate the issue of whether Kabba's claims relating to his 2013 re-employment (without an arbitration agreement) are in fact arbitrable. *Kabba v. Rent-A-Center*, No. PWG-17-211, 2017 WL 1508829 (D. Md. Apr. 27, 2017). The dispute that prevented a ruling in Rent-A-Center's favor was whether, as a matter of contract interpretation under Maryland law, Kabba's refusal to sign the 2013 Arbitration Agreement modified the 2002 and 2012 Arbitration Agreements such that neither would apply to his one day of employment in 2013. *Id.* at *1, *6.

The Fourth Circuit affirmed the April 27, 2017 decision by unpublished opinion, noting again that the issue was "whether the parties in this case manifested an intention to be bound by the [arbitration] agreement," an issue decided under "Mayland's principles of contract formation." *Kabba v. Rent-A-Center, Inc.*, 730 F. App'x 141, 143 (Apr. 13, 2018). The Fourth Circuit concluded that "a reasonable juror could find from Kabba's and RAC's actions that the parties agreed to modify the 2002 and 2012 arbitration agreements at issue to exclude covering any disputes relating to Kabba's 2013 employment," and therefore it was the district court, and not an arbitrator, that "had the authority to determine the arbitrability of Kabba's dispute regarding his 2013 employment based on the 2002 and 2012 arbitration agreements." *Id.*

The parties proceeded with limited discovery targeted to the gateway issue of arbitrability, after which Rent-A-Center filed another Motion to Dismiss or in the Alternative, to Stay Proceedings and Compel Arbitration ("Second Motion"). ECF No. 37.[3] Because, on the record

---

[2] Kabba attached the unsigned 2013 Arbitration Agreement to his Opposition to Rent-A-Center's First Motion. ECF No. 12-1, at 12–16.

[3] The parties fully briefed the motion. ECF Nos. 37-1, 38, 39, 40, 41. A hearing is not necessary. *See* Loc. R. 105.6.

2

before me now, a reasonable trier of fact still could conclude that the parties agreed to modify the 2002 and 2012 Arbitration Agreements so that they would not apply to Kabba's 2013 employment, I will hold Rent-A-Center's Second Motion (treated as a motion for summary judgment) in abeyance while I hold an expedited bench trial on the agreement *vel non* to arbitrate.

## **Standard of Review**

Rent-A-Center again moves to dismiss or to stay and compel arbitration under the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1–15. I provided the standards of review for such motions and for motions for summary judgment in my April 27, 2017 Memorandum Opinion. *Kabba*, 2017 WL 1508829, at *2–3. In sum, under Fourth Circuit law, if the parties agree in writing to arbitrate their disputes, then the Court must dismiss any lawsuit in favor of arbitration "when all of the issues presented in a lawsuit are arbitrable." *Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709–10 (4th Cir. 2001); *see also* 9 U.S.C. § 3. Although "'arbitration has a favored place, there still must be an underlying agreement between the parties to arbitrate,'" and courts analyze the preliminary issue of "[w]hether a party agreed to arbitrate a particular dispute [as] a question of state law governing contract formation." *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 501 (4th Cir. 2002) (quoting *Arrants v. Buck,* 130 F.3d 636, 640 (4th Cir. 1997)); *see also Kabba*, 730 F. App'x at 143.

When, as here, "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). Summary judgment is appropriate if Rent-A-Center demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and [it] is entitled to judgment as a matter

of law," Fed. R. Civ. P. 56(a), (c)(1)(A), and Kabba fails to identify more than a "scintilla of evidence" from which the finder of fact could reasonably find for him. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986). "[T]his Court reviews the facts and all reasonable inferences in the light most favorable to the nonmoving party." *Downing v. Balt. City Bd. of Sch. Comm'rs*, No. RDB-12-1047, 2015 WL 1186430, at *1 (D. Md. Mar. 13, 2015) (citing *Scott v. Harris*, 550 U.S. 372, 378 (2007)).

## Discussion

The April 27, 2017 Memorandum Opinion described the 2002 and 2012 Arbitration Agreements in detail and summarized the other relevant evidence before the Court at the time, which need not be repeated at length here. *See Kabba*, 2017 WL 1508829, at *4–6. Relevantly, the parties agree that the 2002 and 2012 Arbitration Agreements are both valid agreements between the parties, and it is undisputed that Kabba worked for Rent-A-Center in 2013 without having signed the 2013 Arbitration Agreement. *See* 2002 Arb. Agr. 4 (signed Jan. 10, 2002), ECF No. 9-2, at 5–8; Application & 2012 Arb. Agr., ECF No. 9-2, at 10–13; Kabba Aff. ¶¶ 4–6, ECF No. 12-1, at 19–20. As for the earlier arbitration agreements, it is undisputed that the 2002 Arbitration Agreement provided that it covered "all claims or controversies" that the parties may have against each other, including discrimination claims, "past, present or future, whether or not arising out of [Kabba's] application for employment, assignment/employment, or the termination of [his] assignment/employment," 2002 Arb. Agr. 1, and the 2012 Arbitration Agreement included similar language, 2012 Arb. Agr. Additionally, the 2002 Arbitration Agreement explicitly stated that it would "survive the termination of [Kabba's] assignment/employment and the expiration of any benefit." 2002 Arb. Agr. 3. Further, both agreements provided that they could "only be revoked or modified by a writing signed by the parties which specifically states an intent to revoke or

4

modify th[e] Agreement." 2002 Arb. Agr. 3; *see* 2012 Arb. Arg. ("Notwithstanding any contrary language, if any, in this application and/or in any Company policy or handbook, this Arbitration Agreement may not be modified, revised or terminated absent a writing signed by both parties.").

I previously concluded that Kabba's "refusal to sign the 2013 Arbitration Agreement is clearly a manifestation of his rejection of its terms, which are substantially the same as, if not identical to, the terms of the 2002 Arbitration Agreement with regard to the provisions at issue here." *Kabba*, 2017 WL 1508829, at *8. I also concluded that a fact finder could reasonably infer from Rent-A-Center's actions in presenting the 2013 Arbitration Agreement to Kabba and then having him work after he refused to sign it that Rent-A-Center believed that, in order to compel arbitration of any employment disputes relating to Kabba's 2013 hiring or subsequent employment and termination, a newly executed arbitration agreement was required, and that it was willing to forego the arbitration requirement. *Id.* I denied the motion because I found that, on the record before me then, "the parties' conduct could evince a mutual intent to modify the [2002 and 2012] agreements such that they did not apply to Kabba's 2013 employment." *Id.*

In its Second Motion, Rent-A-Center relies on *Rent-A-Center West, Inc. v. Jackson*, 561 U.S. 63 (2010), as it did in its First Motion, insisting again that in *Rent-A-Center West* "[t]he United States Supreme Court found the **exact** delegation clause included in the parties' Arbitration Agreement to be enforceable." Def.'s Mem. 2, 8. Yet in affirming the April 27, 2017 Memorandum Opinion and Order, the Fourth Circuit observed:

> RAC's reliance on *Rent-A-Center* is misplaced, however, as the Supreme Court explicitly noted that that case concerned the *validity* of the arbitration agreement, not *whether the parties manifested an intent to be bound* by the arbitration agreement. *See* 561 U.S. at 70 n.2, 130 S.Ct. 2772 ("The issue of the agreement's validity is different from the issue whether any agreement between the parties was ever concluded, and ... we address only the former." (citation and internal quotation marks omitted) ). Thus, the mere fact that the Supreme Court upheld the exact agreement as valid in *Rent-A-Center* does not answer the question of whether the

5

parties in this case manifested an intention to be bound by the same agreement. Instead, we must turn to Maryland's principles of contract formation.

*Kabba*, 730 F. App'x at 143 (emphasis added).

In its Notice of Supplemental Authority, ECF No. 40, Rent-A-Center also relies on the Supreme Court's more recent decision in *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524 (2019). Rent-A-Center notes that the *Henry Schein* Court held

> When the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract. In those circumstances, a court possesses no power to decide the arbitrability issue. That is true even if the court thinks that the argument that the arbitration agreement applies to a particular dispute is wholly groundless.

*Henry Schein*, 139 S. Ct. at 529. It is true that, if there were a clear agreement to arbitrate the arbitrability of Kabba's claims, then this case would be dismissed in favor of arbitration. But, as with *Rent-A-Center West*, the issue before this Court is distinct because, as the Fourth Circuit noted, this Court first must determine whether the parties agreed to arbitrate the issue of arbitrability or, more specifically, whether their 2002 and 2012 Arbitration Agreements, each of which included a delegation clause, remained in effect after Kabba worked for Rent-A-Center again on March 1, 2013 without signing the 2013 Arbitration Agreement.

Rent-A-Center presents new evidence with its Second Motion to show that the parties intended to be bound to arbitrate disputes, including the threshold issue of arbitrability, by the 2002 and 2012 Arbitration Agreements: An August 30, 2018 declaration from Marc Tuckey, ECF No. 37-2, and the transcript from Kabba's deposition, ECF No. 37-3. According to Tuckey, Rent-A-Center presents applicants and new hires with two arbitration agreements for signature – one at the time of application and then, at the time of hire, a "different arbitration agreement called a *Mutual Agreement to Arbitrate Claims*" that "contains additional and different terms." Aug. 30, 2018 Tuckey Decl. ¶ 14. He stated that "[t]he Mutual Agreement to Arbitrate Claims is a condition

6

of employment" and "is intended to replace the application arbitration agreement." *Id.* Additionally, he asserted that "[a]n applicant cannot be hired at Rent-A-Center unless he or she completes an application and the application is pending in the RAC [electronic] Taleo system at the time of hire." *Id.* ¶ 12.

> Regarding Kabba specifically, Tuckey stated:
>
> When Kabba applied for a position in person in February 2013, for which he was hired, his application of December 4, 2012, was live in the RAC [electronic] Taleo system and was the application used for his hire. *Rent-A-Center has no record of any other application completed by Kabba after December 4, 2012*, and Kabba would not have been hired without this application in the RAC Taleo system.

*Id.* (emphasis added).

Kabba testified to the contrary that he filled out an online application on the day he began work at the Oxon Hill, Maryland store, March 1, 2013, after having interviewed at the Chillum, Maryland store in February 2013. Kabba Dep. 16:3–5, 49:20–22, 50:4:19, 69:10–70:15. He explained that he went to the Chillum store of his own accord to speak with a manager about a position, after not having heard back regarding his December 2012 application. *Id.* at 15:19–16:5, 23:13–24:4. He acknowledged that, typically, applicants complete their application before they are hired, but asserted that it was "not unusual" for him to be hired and then complete an application, given that, when he visited the Chillum store in February 2013, that location did not have a kiosk for applicants to complete applications. *Id.* at 72:8–22.

Insofar as this evidence demonstrates that, regardless whether Kabba completed a new application in 2013, the parties intended to be bound by the earlier agreements from the time they entered into those agreements up to the time that Kabba rejected the 2013 Arbitration Agreement, I note that this fact is undisputed and immaterial. *See Kabba*, 2017 WL 1508829, at \*6, \*7. What

7

is at issue is whether both parties later manifested an intent to modify the earlier agreements through their conduct regarding the 2013 Arbitration Agreement.

As to the parties' intent, the only evidence Rent-A-Center presents is Kabba's testimony, and only to argue that his "subjective beliefs about whether or not the Arbitration Agreements covered his subsequent day of employment in 2013 are inapposite and should be rejected" because the 2002 and 2012 Arbitration Agreements include "express, unambiguous language" about their duration. Def.'s Mem. 14. Yet, the Fourth Circuit already ruled that "a reasonable juror could find from Kabba's and RAC's actions that the parties agreed to modify the 2002 and 2012 arbitration agreements at issue to exclude covering any disputes relating to Kabba's 2013 employment." *Kabba*, 730 F. App'x at 143.

According to Kabba, after he completed the online application, the store manager gave him an arbitration agreement to sign. Kabba Dep. at 78:3–20. In his affidavit, he identified that 2013 Arbitration Agreement as the Mutual Agreement to Arbitrate Claims, Kabba Aff. ¶ 5, i.e., the agreement that is presented to new hires after the application process is complete, *see* Tuckey Decl. ¶ 14. Kabba testified that, when he returned the 2013 Arbitration Agreement to the store manager unsigned, along with other documents he had completed, the manager "looked at them" for "[a]t least five minutes" but did not say anything about them to Kabba, at that time or later. Kabba Dep. 92:13–93:15, 97:2–9. He stated that the manager "went through [the documents] page by page all the way to the last page." *Id.* at 100:6–16.

None of this evidence materially changes the factual circumstances from which the parties' intent could be inferred on the record before me more than two years ago. Even accepting Tuckey's statements that Kabba did not complete another application, the undisputed fact remains that Kabba did not sign the 2013 Arbitration Agreement when the Oxon Hill store manager

8

presented it to him on March 1, 2013, yet he began work that day. And, Kabba has testified that he intentionally did not sign the 2013 Arbitration Agreement because he did not want to be bound to arbitration and, as he saw it, receiving but not signing the 2013 Arbitration Agreement meant that none of the previous arbitration agreements applied. Kabba Dep. 155:7–12 (stating that he understood that, "[w]hen [Rent-A-Center] gave [him] another arbitration agreement to sign for . . . new employment," then the prior arbitration agreement no longer was in effect); *id.* at 161:3–7 ("[E]ach time you come for a new position, they give you the arbitration to see if you still comply. You agree and then you sign it. If you do, yes. If you don't, no."); *id.* at 163:1–10 ("[I]f I'm given a new job, I'm given another arbitration, if I sign it, I agree to the terms of the arbitration. If I don't sign it, I don't agree to the terms of the arbitration."); *see also id.* 174:10–22 ("I learned from mistakes. . . . I just felt that I was not treated right, and if I ever had another opportunity to show or to ask for justice, I would rather take it to the court system rather than going through arbitration."); *id.* at 175:1–176:7 (explaining that the circumstances were different when he signed the 2012 Arbitration Agreement because he knew that if he was "screened to come in for the interview, [he would] have to do this all over, . . . and then [he would] not do what [he] did online").[4]

Certainly, as Rent-A-Center argues, Kabba could not unilaterally modify the 2002 or 2012 Arbitration Agreement. *See* Def.'s Mem. 17. But, as noted, notwithstanding its argument that its corporate office was unaware of Kabba's rejection of the 2013 Arbitration Agreement, *see* Def.'s

---

[4] Insofar as Kabba argues in his Opposition that he "did not have an ongoing obligation to RAC that would require a new agreement in 2013," Pl.'s Opp'n 16, this appears to be an alternative argument, as he also contends that he "modified any past agreements by his express conduct of refusing and rejecting to sign the arbitration agreement in 2013," *id.* at 13. Moreover, he testified in his deposition that the earlier agreements stopped being in effect when he received and rejected the 2013 Arbitration Agreement. Kabba Dep. 155:7–12.

Mem. 20, Rent-A-Center permitted Kabba to begin working on March 1, 2013 without having signed the 2013 Arbitration Agreement. And, it focuses on Kabba's intentions and inability to modify the agreements on his own, rather than identifying any evidence that it did not intend to modify the earlier agreements. Further, the unambiguous language of the 2002 and 2012 Arbitration Agreements as to their duration does not negate either Kabba's testimony regarding his later intent to modify those agreements or the undisputed facts regarding both parties' subsequent conduct. *See Galloway v. Santander Consumer USA, Inc.*, 819 F.3d 79, 88 (4th Cir. 2016) ("[U]nder Maryland law, contractual limitations on future modifications are not effective to prevent parties from entering into new agreements orally or by performance; rather, they only provide context for interpreting subsequent conduct," and "parties may modify their original agreement by their conduct 'notwithstanding a written agreement that any change to a contract must be in writing.'" (citing *Hovnanian Land Inv. Grp., LLC v. Annapolis Towne Ctr. at Parole, LLC,* 25 A.3d 967, 978–83 (Md. 2011); quoting *University Nat'l Bank v. Wolfe*, 369 A.2d 570, 576 (Md. 1977))).

Rent-A-Center now argues that it offered the 2013 Arbitration Agreement to Kabba as a novation, that is, "a new contractual relation that extinguishes the contract that was previously in existence between the parties." Def.'s Mem. 15 (quoting *Holzman v. Fiola Blum, Inc.*, 726 A.2d 818, 830 (Md. Ct. Spec. App. 1999)). Noting that the 2013 Arbitration Agreement stated that it would supersede any prior arbitration agreements, Rent-A-Center asserts that "Kabba testified that he reviewed this provision and understood it meant that if he signed the Proposed New Arbitration Agreement, it would *replace* any prior contracts related to arbitration." Def.'s Mem. 16 (citing Kabba Dep. 113:9-115:21). In Rent-A-Center's view, because Kabba never signed the 2013 Arbitration Agreement, the earlier agreements were not extinguished. *Id.* at 17. Perhaps the 2013

Arbitration Agreement was intended to be a novation, and Kabba's failure to sign it and Rent-A-Center's willingness to move forward with his employment simply meant that one or both of the earlier arbitration agreements remained in effect. But that is simply speculation. On the record before me now, I cannot find as a matter of law that either the 2002 or the 2012 Arbitration Agreement remained in effect, in light of the parties' subsequent conduct that could lead a reasonable fact finder to a contrary finding.

Section 4 of the FAA provides that, "[i]f the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof." 9 U.S.C. § 4. Unless the party challenging the existence of the arbitration agreement (i.e., Kabba) demands a jury trial, "the court shall hear and determine such issue." *Id.* Notably,

> [w]here such an issue is raised, the party alleged to be in default [i.e., not complying with the alleged agreement to arbitrate] may . . . **on or before the return day of the notice of application [i.e., motion to compel arbitration], demand a jury trial of such issue**, and upon such demand the court shall make an order referring the issue or issues to a jury in the manner provided by the Federal Rules of Civil Procedure, or may specially call a jury for that purpose.

*Id.* (emphasis added). Thus, while "[a] motion to stay court proceedings and compel arbitration is an 'equitable defense'" for which the opposing party does not have a constitutional "right to a jury trial on questions of fact related to the making of an arbitration agreement," Section 4 of the FAA provides "a statutory right to a jury trial on the issue." *Burch v. P.J. Cheese, Inc.*, 861 F.3d 1338, 1347 (11th Cir. 2017) (quoting *Shanferoke Coal & Supply Corp. v. Westchester Serv. Corp.*, 293 U.S. 449, 452 (1935)).

Kabba demanded a jury trial when he filed suit, *see* Compl. 1, but he did not demand a jury trial on the issue of arbitrability in response to Rent-A-Center's motion, *see* Pl.'s Opp'n. Because

Kabba did not make such a demand, this Court will proceed to a bench trial[5] on the existence of an agreement to arbitrate Kabba's claims regarding his 2013 employment. *See King v. Capital One Bank (USA), N.A.*, No. 11-68, 2012 WL 4404862, at *1 (W.D. Va. Sept. 25, 2012) ("[A] general jury demand in a complaint does not obviate the need to specifically request a jury trial under Section 4 of the FAA, and Plaintiff failed to make the special jury demand required by the FAA."); *see also Burch*, 861 F.3d at 1349–50 & n.20 (concluding that because "Burch's only jury demand came in the form of a general demand in his complaint" and he "failed to demand a jury trial on a specific issue related to the making of the arbitration agreement, he waived his right to a jury trial on that issue" and noting that the Fifth Circuit and "the vast majority of district courts" have reached the same conclusion; citing, e.g., *Adams v. Citicorp Credit Servs., Inc.*, 93 F.Supp.3d 441, 448 n.5 (M.D.N.C. 2015), and noting that the Middle District of North Carolina held that "because the plaintiff—who had made a general jury demand in his complaint—did not demand a jury trial in his response to the defendant's motion to compel arbitration, he 'did not timely demand a jury trial on [the arbitration] issue'"). I will schedule a call to select a date for trial and hold Rent-A-Center's motion in abeyance until the conclusion of trial.

## ORDER

Accordingly, it is, this 21st day of June, 2019, hereby ORDERED that

1. Defendant's Second Motion to Dismiss or in the Alternative, to Stay Proceedings and Compel Arbitration, ECF No. 37, treated as a motion for summary judgment, IS HELD IN ABEYANCE; and

---

[5] I note that, given the Court's current caseload, had Kabba demanded a jury trial, the parties' case likely would have languished for more than a year, as the last jury trial I scheduled will take place in September 2020. A promptly scheduled bench trial is much easier to accommodate and will expedite the resolution of the issue.

2. I will schedule a call to select a date for an expedited bench trial on the issue of arbitrability.

/S/
Paul W. Grimm
United States District Judge

lyb